HARRIS, Presiding Judge.
Appellant was indicted by the grand jury of Jefferson County, Alabama, for indecent molestation of his seven-year-old daughter. In the presence of counsel, appellant was duly arraigned, entering a plea of not guilty to the charge. Appellant was found guilty and was sentenced to five years imprisonment in the State penitentiary. Appellant was found to be indigent and was furnished a free transcript. New counsel was appointed to represent him on this appeal.
The sufficiency of the evidence in this case is not presented for review. Appellant did not move to exclude the State’s evidence; did not request the affirmative charge; no exceptions were reserved to the oral charge of the Court; there was no motion for a new trial; and there were no adverse rulings which contained any merit.
Appellant’s first contention of error is that his daughter, the victim in this case, was not competent to testify and should not have been allowed to do so. The preliminary examination of this witness by the State’s attorney is set out below:
“BAILIFF McCOMBS: Judge, do you want to swear her in or—
“MR. RUSSELL: Wait a minute. Let me do something first.
“THE COURT: All right.
“MR. RUSSELL: Teresa, you remember me?
“THE WITNESS: (Nodding head affirmatively)
“MR. RUSSELL: Huh?
“THE WITNESS: Yes.
“MR. RUSSELL: Okay. Do you remember what we talked about?
“THE WITNESS: (Nodding head affirmatively)
“MR. RUSSELL: Say yes or no. Don’t you?
“THE WITNESS: Right.”
[[Image here]]
“MR. RUSSELL: Okay. Do you know what it means, that if you don’t tell the truth what will happen to you if you don’t tell the truth? Have you ever head of — Have you ever heard of the term hell?
“THE WITNESS: (Shaking head negatively)
“MR. RUSSELL: You never heard that. Have you ever heard of the term heaven?
“THE WITNESS: (Shaking head negatively)
“MR. RUSSELL: No? Do you know that it is bad to tell a lie?
“THE WITNESS: (Nodding head affirmatively)
“MR. RUSSELL: Huh?
“THE WITNESS: (Nodding head affirmatively)
“MR. RUSSELL: Speak up, Honey. Yes or no?
“THE WITNESS: No.
“MR. RUSSELL: Do you know it’s bad to tell a lie?
“THE WITNESS: (No response)
“MR. RUSSELL: Pardon?
“THE WITNESS: No.
“MR. RUSSELL: You don’t know that it’s bad?
“THE WITNESS: (Shaking head negatively)
“MR. RUSSELL: Would you tell a lie? “THE WITNESS: No.
“MR. RUSSELL: You would not. Why wouldn’t you tell a lie?
“THE WITNESS: (No response)
“THE COURT: Because it’s bad to tell a lie?
“THE WITNESS: (Nodding head affirmatively)
“MR. RUSSELL: You just know that it’s good to tell the truth about things? “THE WITNESS: Yes.
“MR. RUSSELL: Okay. Do you know what it means, Teresa, to raise your hand and say that I swear to tell the truth?
“THE WITNESS: Yes.
*1042 “MR. RUSSELL: Okay. • Do you swear that you will tell these gentlemen here today the truth?
“THE WITNESS: Yes.
“MR. RUSSELL: Okay. How old are you?
“THE WITNESS: Eight.”
* * * * * *
“MR. RUSSELL: Okay. Would you tell a lie to get your daddy in trouble?
“THE WITNESS: No.
“MR. RUSSELL: Okay. When you were living with your daddy did your daddy do something to you?
“THE WITNESS: Yes.
“THE COURT: She has never been sworn. Do you want to see to that?
“MR. RUSSELL: Judge, you can go ahead. I think she understands. Do you think she’s qualified?
“THE COURT: I believe she is.
“MR. SAWYER: Are you going to make a ruling on whether she is qualified?
“THE COURT: The Court says she is qualified.”
Code of Alabama, 1975, Section 12-21— 165, states:
“(a) Persons who have not the use of reason, such as idiots, lunatics during lunacy and children who do not understand the nature of an oath, are incompetent witnesses.
“(b) The court must, by examination, decide upon the capacity of one alleged to be incompetent from idiocy, lunacy, insanity, drunkenness or infancy.” (Emphasis added)
In Conner v. State, 52 Ala.App. 82, 289 So.2d 650, 654, cert. denied, 292 Ala. 716, 289 So.2d 656, we find the following language:
“We believe that the Alabama cases are clear to the effect that, while the trial judge ex mero motu may reject a tendered witness of tender years, nevertheless, he may rely on the adversary process and swear the witness without error if no objection is raised.” (Footnote omitted)
Further discussion of appellant’s contention is pretermitted.
Next appellant contends that he was not allowed to elicit testimony showing bias and prejudice by his wife against him. During cross-examination by appellant, Mrs. Kyle testified that she had not told her husband that she would get even with him for asking her for a divorce in order to leave her for another woman.
Then during the appellant’s testimony, the following occurred:
“Leading up to the events of — going back a little bit, when the alleged incident happened on the 25th of January, 1977, had your wife ever left you?
“A. Yes, sir.
“Q. The time that she went to Gadsden and took the children and you came back up there, what lead into that and what happened?
“A. I don’t know what lead into it. But I’m a truck driver. And I was in Ohio when she left me. And I usually call home and let her know what time I’m coming in.
“And I called home and there was no answer. So, I turned around and called my brother—
“MR. RUSSEL: We object to all of that. “THE COURT: Sustained.
“Q. Did you go after her?
“A. Yes, sir.
“Q. What were the results of your going to Gadsden to get her?
“MR. RUSSELL: Judge, we still object to that.
“THE COURT: Sustained.
“MR. SAWYER: Your Honor, we are trying to prove a motive on why she swore out a warrant.
“THE COURT: All right. You may ask him.”
Out of the presence of the jury, on voir dire examination, appellant testified that his wife had wanted him to take their children and care for them because she could not feed them. This occurred a year before the alleged offense, while appellant’s wife was staying with her mother in Gadsden, Alabama. At some later point appellant’s *1043 wife returned home for the sake of the children. Appellant further testified as follows:
“Q. At any time did she come in asking for a divorce?
“A. She asked me for a divorce so many times and I would tell her that I would give her one if she wanted it. But then I told her, I said I had rather not have a divorce on account of the five kids.
“Q. And all of this time you were supporting her, right?
“A. Right.
“Q. Is it not true that you have — that she has confronted you with that she is having affairs with both Albert—
“THE COURT: This is a leading question of your witness.
“MR. RUSSELL: It’s voir dire.
“THE COURT: I know it. But I still— All right. If you don’t object.
“MR. RUSSELL: I don’t object to it on voir dire.
“THE COURT: All right.
“Q. Is it not true that she has given you the reasons why she wants a divorce?
“A. Yes. She told me that she found somebody else. She come out one night and told me about Matthew Clowdus. And I told her okay, that I would give her a divorce.
“Q. Is there anybody else?
“A. I don’t know of nobody else except that this Watkins lived next door to me.
“Q. When you told her that you had found you a girl friend what was her reply?
“A. She said well, you date who you want to date and I will date who I want to date. And I said well, if that’s the way you want it, if you don’t want a divorce. I said I want a divorce, but if you don’t want one, well, it’s okay with me. I will go on and support my kids.
“And I said if you want to run around while I’m gone, I said it’s all right with you.
“Q. Was she using it in a vindictive way, in a getting even type of way or anything because you had a girl friend?
“A. No. She didn’t say nothing that night . . .
Following this testimony, the Court sustained the State’s objection to this line of questioning, agreeing with the State that appellant’s evidence failed to show any bias or prejudice on the part of Mrs. Kyle.
A party against whom a witness has been called may question him in regard to his feelings toward him. Anything which tends to show bias, unfriendliness, or enmity by the witness against the party is admissible. Nichols v. State, 276 Ala. 209, 160 So.2d 619; Gamble, McElroy’s Alabama Evidence, 3rd Edition, Section 149.01(1). However, the trial court has discretionary power to allow or disallow proof of specific facts to show the witness’s bias and that discretion is not to be disturbed unless it clearly appears that the defendant is prejudiced thereby. Benefield v. State, 44 Ala. App. 339, 208 So.2d 449, cert. denied, 282 Ala. 19, 208 So.2d 455.
The evidence which appellant sought to adduce in no way corroborated the alleged occurrence that his wife had told him that she would “get even” with him for wanting a divorce. In fact, appellant testified, as seen above, that it was his wife who requested the divorce.
Furthermore, were it held that appellant’s testimony indicated his wife’s bias or prejudice, Mrs. Kyle testified that her marriage to appellant had been a troubled one and that she had filed for a divorce. Mrs. Kyle’s possible bias or hostility against her husband was squarely before the jury, and the Court’s sustaining of the State’s objection to appellant’s testimony was not error. See Allen v. State, 55 Ala.App. 549, 317 So.2d 517.
Finally, appellant urges that he was not allowed to cross-examine his daughter concerning prior inconsistent statements made by her at a preliminary hearing. The record shows that appellant only asked the witness if she had been unable to answer some questions at the preliminary hearing, which she was able to answer at trial. Without specifying the content of the al *1044 leged prior inconsistency, appellant failed to establish the proper predicate for impeachment. Gamble, McElroy’s Alabama Evidence, 3rd Edition, Section 157.01(1).
A careful search of the record reflects no error injuriously affecting the substantial rights of the appellant. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.