Appellant, James Edward Page, was indicted for the intentional killing of Lindsey Wayne Bradley, "by shooting him with a shotgun," in violation of § 13A-6-2, Code of Alabama 1975. The jury found appellant "guilty of murder as charged in the indictment," and following a sentencing hearing, the trial judge sentenced him to imprisonment for life in the penitentiary.
The State's evidence showed that on April 11, 1984, at approximately 4:15 p.m., Rick Gaddy and appellant went to the home of Lindsey Wayne Bradley. Appellant had a shotgun in his vehicle and was armed with a pistol. Appellant's former wife, Cathy Ann Page, who was dating Bradley, was at the Bradley home. Her two young children were with her. The children were the issue of the marriage of Cathy Ann Page and appellant. Bradley was also present. Bradley invited appellant in. Appellant had a pistol in his back pocket, and Bradley told him to go out and put it in his vehicle. Appellant denied having a pistol in his pocket, whereupon Bradley grabbed the pistol through appellant's pants pocket and a scuffle ensued. Bradley produced his own pistol, pointed it at appellant's stomach and pushed him out of the house. Bradley told appellant "over and over" that he did not want any trouble, wanted appellant to leave, and did not want to kill him. Appellant and Gaddy left; however, as they were leaving, appellant pointed his finger at Bradley and said, "You are a dead man." He also pointed his finger at his former wife and said, "I will get you too, bitch."
After having dinner at Gaddy's house, appellant drove to the home of Ms. Gaynell Turner, which is located a short distance across a field from the home of Lindsey Wayne Bradley. He arrived at Ms. Turner's mobile home residence around 6:45 p.m., and asked Ms. Turner for permission to park his van-type vehicle in her driveway. She agreed. He said he had something to check on. He then left on foot, but returned in about 20 minutes. Upon returning, he leaned a double-barreled shotgun against the outside wall of the mobile home and entered. He stated to Ms. Turner, "Gaynell, you ain't saw nothing or heard nothing, that way you won't be getting involved." Appellant asked Ms. Turner's son-in-law, Randy Hann, who was present, to drive him home. Hann complied, but when they arrived at appellant's house, he asked Hann to take him back to his vehicle. Hann drove appellant back to his vehicle. Appellant put his shotgun in his vehicle, drove his vehicle across the road from the Turner residence, and parked it among some pine trees. By this time it was dark. During the trip with Hann, appellant stated, "He shouldn't have pulled a gun on me." A short time after appellant had parked his vehicle among the pines, Ms. Turner heard gunshots, and shortly afterwards heard someone running along the road. She then saw appellant's vehicle pull out of the pine trees and leave. She testified that about 20 minutes elapsed *Page 1001 
from the time appellant parked his vehicle in the pines until the vehicle left.
Shortly after dark that evening, Bradley, upon hearing his dogs bark, armed himself with a pistol and rifle and went out into the yard to investigate. Shortly after going out, Cathy Ann Page heard gunshots, and Bradley came running back inside and stated that he had been shot. He was bleeding from the chest area, nose, and mouth. He collapsed on the kitchen floor. He had been struck in the chest area by a single double-aught buckshot pellet. His rifle lay on the floor nearby. It had a live round in the chamber, and the hammer was back. A spent cartridge also lay on the floor, and Bradley had a loaded .38-caliber pistol on his person. He died shortly thereafter as a result of the wound received from the pellet.
The State introduced evidence of a man's bootprints making two separate round trips across the field between the mobile home of Ms. Turner and the residence of the victim, Bradley. There were no other bootprints or footprints in the field. The bootprints were apparently made the night of the shooting. One set of the bootprints led from the area of Ms. Turner's mobile home, and the other from the area of the pines across the road from the mobile home. The bootprints led to an area near the victim's residence where the grass and weeds were packed down in some bushes. Some bushes were cut at the top. A Vantage cigarette butt was found in the packed down area and a piece of shotgun wadding was found nearby. It was apparent that the grass and bushes had been mashed down and cut and the cigarette butt discarded the night of the shooting. A number of shotgun pellets had struck the side of the victim's house, a woodpile adjacent to the house, and the automobile of appellant's former wife, which was parked in the yard. A double-aught buckshot pellet was recovered from the woodpile. The distance from the mashed down area in the bushes to the victim's house was 142 feet, 7 1/2 inches. A firearms expert testified that a shotgun firing buckshot could kill a person in that range. A Vantage cigarette butt was also found in the vicinity of the pines where appellant had parked his vehicle.
Appellant consented to a search of his home and vehicle, and certain items were seized, which were introduced in evidence. Among these items were a derringer pistol, a double barreled shotgun, one pack of Vantage cigarettes, several cigarette butts, one pair of brown leather Wrangler boots, and two expended Winchester Super X twelve gauge magnum shotgun shells. One of the shells was found in appellant's pocket and the other in his van. Both shells had been fired from the right chamber of appellant's double barreled shotgun. The saliva on the cigarette butts found at the scene of the shooting and in appellant's home were examined and compared with saliva samples taken from appellant. The saliva found on all of the cigarette butts came from a person who is a Group A secretor. It was determined that appellant is a Group A secretor. The victim's shirt containing the pellet hole was introduced into evidence. It did not contain powder burns. This fact indicated that the fatal shot was fired from some distance away.
After calling several character witnesses, appellant called Guyward Wayne Miller as a witness. Miller had been a guest in the residence of the victim at the time of the shooting. Miller testified that shortly after dark on the day of the incident, Bradley's German Shepherd dog started barking, and Bradley got his rifle and went outside to investigate. Miller testified that he heard "two or three" shots. He said it seemed that one shot was nearby and two other shots followed some distance away. Shortly after he heard the shots, Bradley came into the house. He was carrying his rifle in his hand and was bleeding from his side.
Appellant testified in his own behalf. He admitted going to the victim's residence with Rick Gaddy on the afternoon of the incident. He testified that the victim pointed a pistol at him and forced him to leave. After leaving he had supper at Gaddy's residence, visited his uncle, had four or five beers, and drove to Ms. Turner's mobile *Page 1002 
home. He left his van in her driveway and went through the field to Bradley's home. He testified that he observed the Bradley house for about ten minutes and returned to Ms. Turner's mobile home. Randy Hann, Ms. Turner's son-in-law, drove him home at his request and brought him back. Appellant drove his van across the road from the mobile home, parked it among the pines, got his double barreled shotgun, and went back across the field to the Bradley house. From the place in the bushes where the grass was mashed down, he observed the Bradley residence for about fifteen minutes. He testified that the spot on which he was standing was not on Bradley's land. He stated that Bradley's dog began barking and running toward him; that Bradley came out of his house with his rifle and started running toward him; that Bradley was hollering over and over, "I will kill you, you son-of-a-bitch"; that he believed his life was in danger; that he thought he heard a shot and saw a flash; that he fired to the right of the "man" trying to stop him; that he never intended to kill him; and that the "man" and the dog kept coming and he fired another shot to the right of the "man", and turned and ran to his van. He said that he did not know that he had shot Bradley, and that after the second shot, Bradley turned and went back into his house. Appellant testified that he had only two shotgun shells; that he was scared; and that he could not have safely retreated. Appellant testified that if he had run back across the field "he could have easily picked me off." After reaching his van, he drove home. He put one of the empty shotgun shells in his van, one in his pocket, and put the shotgun in his pick-up truck. These items were seized by the officers and introduced into evidence by the State. Appellant further testified that Bradley was a professional gambler and raised and fought game roosters; that his two daughters, ages nine and seven, were in Bradley's house, and he was concerned about them being where there was gambling and drinking; that he took the shotgun with him because of the threat Bradley had made toward him previously that day by pointing a pistol at him; that Bradley had threatened to kill him on two previous occasions, and was known to carry a weapon. He admitted that he and Bradley had gone places together, including rooster fights, and had been good friends prior to his divorce. On cross-examination, appellant testified that the derringer was the pistol he carried with him into Bradley's house, and that he had purchased it five days before the shooting. He admitted that he told Bradley at the time of the altercation earlier in the day that "You are a dead man"; admitted making two round trips across the field between Ms. Turner's mobile home and the Bradley residence; and admitted propping the shotgun against the side of the mobile home after the first trip. He denied taking the shotgun across the field with him on the first trip, and explained that he took the shotgun from his van after the first trip and propped it against the mobile home. He denied telling Ms. Turner that she should deny seeing him the evening of the incident if anyone asked. He admitted that later on the night of the shooting, he told the sheriff that he had not been to the Bradley home earlier that day, and had not had a shotgun in his possession that day. He admitted that he had lied to the sheriff, and explained by stating, "I wasn't under oath." He testified that he could not remember whether he reloaded the shotgun after he had fired the first shot, but stated that he "could have." He admitted that he could have smoked the cigarette at the spot in the bushes where the grass was mashed down. He denied making prior threats against Bradley or his former wife.
In rebuttal, the State recalled appellant's former wife, and she testified that after she and appellant were divorced, he told her that if she didn't come back to him he would kill anybody that "tried to have her."
Upon conclusion of the State's case-in-chief, appellant moved for a judgment of acquittal on the ground that the State had failed to prove a prima facie case. This motion was denied by the trial court. This *Page 1003 
motion was renewed after all the evidence was in and both parties had rested, and likewise denied. After conviction and sentencing, appellant again filed a motion for judgment of acquittal on the ground that the verdict was contrary to the weight of the evidence. After a hearing, this motion was also denied. Appellant filed a motion for a new trial questioning, inter alia, the sufficiency of the evidence to convict, which was also denied. Appellant appeals his conviction, raising four issues.
 I
Appellant first asserts that the trial court committed reversible error in sustaining the State's objection to a question directed to a prosecution witness on cross-examination concerning the state of the witness's feelings toward the defendant. The following question was propounded to Cathy Ann Page on cross-examination: "What is the state of your feelings toward the Defendant, James Edward Page?" The State's objection to the question was sustained.
It is always permissible to cross-examine a witness to ascertain his interest, bias, prejudice, or partiality concerning matters about which he is testifying. Generally, anything which tends to show bias, unfriendliness, enmity, or inclines a witness to swear against a party is admissible.Nichols v. State, 276 Ala. 209, 160 So.2d 619 (1964); Green v.State, 258 Ala. 471, 64 So.2d 84 (1953); Kyle v. State,363 So.2d 1040 (Ala.Crim.App. 1978); Zeigler v. State, 52 Ala. App. 501, 294 So.2d 468 (Ala.Crim.App. 1973), cert. quashed,292 Ala. 792, 294 So.2d 471 (Ala. 1974); Maples v. State,44 Ala. App. 491, 214 So.2d 700 (1968); West v. State, 37 Ala. App. 125, 65 So.2d 203, cert. denied, 259 Ala. 5, 65 So.2d 207
(1953); Blackshear v. State, 33 Ala. App. 576, 36 So.2d 244, cert. denied, 251 Ala. 11, 36 So.2d 250 (1948); 98 C.J.S.Witnesses § 559 (1957); C. Gamble, McElroy's Alabama Evidence § 149.01 (1) (3d ed. 1977); 3 Wharton's Criminal Evidence § 1346 (11th ed. 1935). Section 12-21-137, Code of Alabama 1975, provides: "The right to cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him. . . ."
Ordinarily the proper way to show bias on the part of the witness is to ask him directly the state of his feelings, and if he denies bias, then resort may be had to facts tending to show it. Adams v. State, 280 Ala. 678, 198 So.2d 255 (1967);Nichols v. State, supra; Maples v. State, supra; Meador v.State, 37 Ala. App. 573, 72 So.2d 418 (1954).
Appellant argues in his brief that although the trial court normally has discretion concerning the conduct of cross-examination, such discretion is severely limited when a party attempts to impeach an adverse party's witness for bias. He relies on Proctor v. State, 331 So.2d 828 (Ala.Crim.App. 1976), which states as follows:
 "Where the witness's testimony is of major importance and is strongly adverse to the party against whom he has testified, the usual discretion of a trial court has a narrow range, and it generally is required to allow proof of any important fact indicating bias of the witness."
He contends that Cathy Ann Page was a witness of major importance; was strongly adverse; played a major role in the State's case; and supplied many facts that came from no other witness. He claims that the trial court abused its discretion in sustaining the State's objection to the question on cross-examination directed to Cathy Ann Page inquiring as to her feelings toward appellant.
In its brief, the State takes the position that there was no abuse of discretion, arguing that evidence had been presented to the jury that the witness was appellant's ex-wife, that he had made threats against her, and "any possible bias or hostility against appellant was squarely before the jury." The State relies on Bridges v. State, 284 Ala. 412, 225 So.2d 821
(1969); Kyle v. State, supra; and Allen v. State, 55 Ala. App. 549, 317 So.2d 517 (1975). In Bridges v. State, supra, the Supreme Court of Alabama stated: *Page 1004 
 "It has been repeatedly held by this court that the scope and extent of cross-examination is vested in the sound discretion of the trial court, and its rulings will not be disturbed in the absence of a clear showing that error intervened to the prejudice of the objecting party."
While this is a correct statement of the law, the facts inBridges do not concern cross-examination for purposes of showing bias, and therefore the case is distinguishable from the case at bar. The case of Kyle v. State, supra, is more in point. The trial court in Kyle found that the evidence which the appellant sought to adduce on cross-examination failed to show any bias on the part of his former wife, and limited the cross-examination in that regard. Kyle was trying to elicit testimony that his former wife had told him that she would "get even" with him for wanting a divorce. Appellant, in fact, testified that it was his wife that wanted the divorce. This court found that there was no error injuriously affecting the substantial rights of Kyle, and went on to say:
 "Furthermore, were it held that appellant's testimony indicated his wife's bias or prejudice, Mrs. Kyle testified that her marriage to appellant had been a troubled one and that she had filed for a divorce. Mrs. Kyle's possible bias or hostility against her husband was squarely before the jury, and the court's sustaining of the State's objection to appellant's testimony was not error. See Allen v. State, 55 Ala. App. 549, 317 So.2d 517."
Id. at 1043. In Allen v. State, supra, this court stated:
 "Where the State had previously brought to the attention of the jury the fact that the witness against the appellant was a cousin of another defendant charged in the same shooting, and where the same fact was again brought to the attention of the jury by the appellant's counsel, the possibility of bias arising out of such kinship was squarely before the jury for their consideration. Therefore, the additional question to the witness as to whether he would "do or say anything" to protect his cousin could properly be sustained by the trial judge without abusing its discretion."
Id. 317 So.2d at 522.
Mrs. Page testified that she and appellant were recently divorced, after ten years of marriage. Mrs. Page filed for the divorce. They had two children. They were young girls of the ages of six and nine. Mrs. Page apparently had been awarded custody of the children. She testified that she and appellant were divorced January 25, 1984, and that around February 1, 1984, she began dating the deceased, Bradley. She and the children were frequently in Bradley's home. Bradley and appellant had been friends prior to the divorce. Mrs. Page stated that appellant threatened her on three occasions. On the day of the shooting she stated that appellant said, "I will get you too, bitch." It is readily apparent from the evidence that the Pages' marriage had been a troubled one, and that strong feelings of hostility existed between them at the time of the trial of this case. Appellant was obviously interfering with Mrs. Page's life and activities, and upsetting the children. Appellant had killed her boyfriend. When appellant was testifying, he was asked: "Was there bad feeling because of your ex-wife or your children?" He answered, "Because of my children." He is obviously referring to bad feeling between him and his former wife and her boy friend.
The jury had more than ample facts upon which to determine Mrs. Page's interest and credibility. Her possible bias or hostility against her former husband was squarely before the jury. Appellant, in effect, concedes this in his brief. He states as follows:
 "The fact that their marriage failed indicates a high likelihood of bad feelings between the two. Further, the fact that she was at the time dating a man who was once a good friend of appellant makes this likelihood a probability. Additionally, her own testimony was of a threat from the appellant, `I will get you *Page 1005 
too, bitch.' If this testimony is believed, there was obviously `bad blood' between the two."
Following the reasoning of this court in Allen v. State, supra and Kyle v. State, supra, we find that Mrs. Page's possible bias or hostility against her former husband was squarely before the jury, and the trial court's sustaining of the State's objection to Mrs. Page's testimony about her feelings toward appellant was not error. The jury clearly had sufficient information to appraise the bias and motives of the witness and any restrictions imposed by the trial judge were not prejudicial to appellant. The question, "What is the state of your feelings toward the Defendant, James Edward Page?" could properly be sustained by the trial judge without abusing his discretion under the facts of this case.
Assuming arguendo that the sustaining of the State's objection to the question was error, in our opinion it would be error without injury. Rule 45 of the Alabama Rules of Appellate Procedure is as follows:
 "No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."
It is well established that under Rule 45 and appellant must not only show error, but must also demonstrate that such error was probably injurious. Kennedy v. State, 291 Ala. 62,277 So.2d 878 (1973); Kabase v. State, 244 Ala. 182, 12 So.2d 766
(1943). We are authorized to reverse only when the error complained of has probably injuriously affected substantial rights, and this is to be determined only after an examination of the entire record. Kennedy v. State, supra; Chillous v.State, 405 So.2d 58 (Ala.Crim.App. 1981); Savage v. State,380 So.2d 375 (Ala.Crim.App. 1980).
In the case sub judice, under Rule 45 we must assess whether or not any error has probably injuriously affected the right to cross-examine to probe for bias. After examination of the entire cause, we are not of the opinion that the error probably injuriously affected substantial rights of appellant.
Not only was there an abundance of evidence from which the jury could determine bias and hostility on the part of Mrs. Page, but an analysis of the entire record shows that Mrs. Page was not as important a witness as appellant contends. In fact, the State could have made out its case without her testimony at all. Rick Gaddy testified to the earlier altercation between appellant and the victim, and to the threat, "You are a dead man," made by appellant. Guyward Wayne Miller testified to the happenings at the Bradley home at the time of the shooting, and his testimony was in substantial agreement with that of Mrs. Page. Mrs. Page did not observe the actual shooting. The physical facts are essentially undisputed, as they were admitted by appellant. The principal contribution of Mrs. Page in the way of evidence, which was not testified to by other witnesses, concerned threats. She stated that shortly after her divorce from appellant, he threatened that if she did not come back to him, he would "kill anybody that tried to have you." This threat was general and not directed specifically at the deceased. She also stated that on April 10, the day before the shooting, appellant told her he would "get me and Lindsay both," and on the day of the incident, at the time of the earlier altercation, when he threatened Bradley, he also said to Mrs. Page, "I will get you too bitch." Appellant's threat to Bradley, "You are a dead man" was not only proven by Rick Gaddy, but admitted by appellant. Appellant's comment to Randy Hann, "He shouldn't have pulled a gun on me," can also be interpreted as an indirect threat. *Page 1006 
The fact that the jury had evidence before it of threats made by appellant toward the deceased from testimony of persons other than Mrs. Page, reduces the importance of Mrs. Page's testimony.
It is our judgment that the results in this case would not have been different had the witness been permitted to answer the question. The bias and hostility between appellant and his former wife were obvious. Appellant admits it in his brief. Appellant could not therefore have suffered any probable injury to any of his substantial rights as a result of the ruling of the court, even if it had been erroneous. For the above reasons we find no merit in this contention of appellant. There is no reversible error here.
 II
Appellant further contends that the trial court committed reversible error in denying his motions for judgment of acquittal. He filed motions for acquittal at the close of the State's case, at the conclusion of appellant's case after both sides had rested, and after the jury's verdict. The grounds stated for the motions were that "the State has failed to prove that the defendant intentionally caused the death of Lindsey Bradley or in the alternative for judgment of acquittal to manslaughter and that the verdict was contrary to the evidence." We have reviewed the evidence and find the motions to be without merit.
In deciding whether or not there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871
(Ala.Crim.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979);Bass v. State, 55 Ala. App. 88, 313 So.2d 208 (1975). Conflicting evidence presents a jury question not subject to review on appeal, provided the State's evidence established a prima facie case. Gunn v. State, 387 So.2d 280 (Ala.Crim.App.), cert. denied, 387 So.2d 283 (Ala. 1980); McBryar v. State,368 So.2d 568 (Ala.Crim.App.), cert. denied, 368 So.2d 575 (Ala. 1979); 7 Ala. Digest, Criminal Law, Key No. 1159.3. The action of the trial court in denying a motion for acquittal, and in denying a motion for a new trial, must be reviewed by determining whether or not there exists legal evidence before the jury, at the time the motions are made, from which the jury by fair inference could find the defendant guilty. Thomas v.State, 363 So.2d 1020 (Ala.Crim.App. 1978). A verdict of conviction will not be set aside on the ground of insufficiency of the evidence, unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust. Johnson v. State, 378 So.2d 1173
(Ala. 1979); Duncan v. State, 436 So.2d 883 (Ala.Crim.App. 1983), cert. denied, 464 U.S. 1047, 104 S.Ct. 720,79 L.Ed.2d 182 (1984).
As we have previously pointed out, the facts in the instant case are largely undisputed. Appellant admitted that he stated to the victim earlier on the day of the shooting, "You are a dead man." He admitted approaching the home of the victim from across a field on two occasions and watching the home from a hidden position. Although he admitted shooting the victim, he claimed that he did not intend to hit or kill him, but fired twice to the victim's right in an effort to stop the victim from advancing on him. He contends that it was unsafe for him to retreat, and that his actions were taken in self defense. He points to the fact that only one pellet struck the victim as being supportive of his contention that he did not intend to shoot Bradley.
The State's evidence in this case is for the most part circumstantial. Circumstantial evidence is in no wise considered inferior evidence, and will sustain a conviction as stoutly as will direct evidence, provided it points to the guilt of the accused. Davis v. State, 418 So.2d 959
(Ala.Crim.App. 1982). The test that must be applied is not whether the circumstantial evidence excluded every reasonable hypothesis of guilt, but, rather, whether a jury might reasonably *Page 1007 
find that the evidence excluded every reasonable hypothesis except that of guilt. Agee v. State, 470 So.2d 1331
(Ala.Crim.App. 1985); Davis v. State, supra.
Viewing the evidence in the light most favorable to the State, we find that the trial court properly submitted the case to the jury. We find that there was sufficient evidence presented by the State to allow the jury to conclude that appellant was guilty of the crime charged, i.e., that appellant intentionally caused the death of Bradley by shooting him with a shotgun. The jury could easily infer from the evidence that appellant lay in wait for Bradley and intentionally killed him with a shotgun. There was ample evidence from which the jury could infer the requisite element of intent. Appellant denied any intention to kill Bradley, but obviously the jury did not believe him. Conflicts in the evidence are for the jury to resolve. Hughes v. State, 412 So.2d 296 (Ala.Crim.App. 1982). The jury is so positioned as to be able to test the credibility of witnesses and their decision in that regard will not be disturbed on appeal. Walker v. State 416 So.2d 1083
(Ala.Crim.App. 1982). The question of intent is hardly ever capable of direct proof. Such questions are normally questions for the jury. Loper v. State, 469 So.2d 707 (Ala.Crim.App. 1985). Here, intent was clearly a question for the jury. Where, as here, the killing was admitted, the question of whether or not it was justified under the theory of self defense was likewise for the jury. Townsend v. State, 402 So.2d 1097
(Ala.Crim.App. 1981); Clark v. State, 39 Ala. App. 505,104 So.2d 451 (1958).
After examining all the evidence and applying the proper standards of review, we find that there was sufficient evidence presented to allow the jury to conclude beyond a reasonable doubt that appellant was guilty as charged. Here, the jury could reasonably find that the evidence excluded every reasonable hypothesis except that of guilt.
Accordingly, appellant's motions for judgment of acquittal were properly denied.
 III
Appellant next contends that the trial court committed reversible error by denying appellant's motion for a new trial. In support of his motion for new trial, he argues that the jury's verdict is contrary to the weight of the evidence. He asserts that the evidence of appellant acting in self defense was sufficient to create a reasonable doubt as to his guilt, and that there was insufficient evidence presented to find that he intended to kill Bradley.
Having heretofore concluded that the case was properly submitted to the jury by the trial court, and that there was sufficient evidence presented for the jury to determine appellant's guilt, we find that the trial court did not err in denying appellant's motion for a new trial.
 IV
Appellant contends that the trial court committed reversible error by refusing to give his requested written instruction No. 22, which reads as follows:
 "The court charges the jury that the burden is upon the State to convince each one of you beyond a reasonable doubt from the evidence in this case that the Defendant provoked the difficulty and unless the State has so convinced each of you, you should find the Defendant not guilty, if from the evidence you are reasonably satisfied that at the time the fatal shot was fired the deceased was using or about to use deadly physical force upon the Defendant, James Page, and the Defendant fired the shot to save his life or to save himself from grievous bodily harm, you should find the Defendant not guilty."
He also contends that error was committed by the trial court, in instructing the jury on the law of self defense, when it charged that "it must appear from the evidence that the defendant was free from fault in bringing on the difficulty." Appellant argues that the portion of the oral charge complained of was an incorrect statement of the law, and that it may have *Page 1008 
led the jury to believe that the appellant had the burden of proof regarding self defense. We do not agree. The trial judge's oral charge to the jury correctly and adequately covered all the points of law, including the law of self defense, at the conclusion of which the appellant's attorney stated that he had no objections to the charge. After saying he had no objections, he added, "Thought it was very thorough and very good." Since no objection was made to any part of the oral charge, there is nothing before us to review in this regard. Nevertheless, we do not view the portion of the oral charge complained of to be an incorrect statement of the law. In using the term "free from fault" in bringing on the controversy, the court obviously was referring to the portions of his charge previously given requiring that a person claiming self defense be free from fault in provoking the use of unlawful physical force by the other person, and free from being the aggressor. The oral charge pertaining to the use of force in self defense fully covered the law as set out in § 13A-3-23, Code of Alabama 1975. In the Commentary to § 13A-3-23, the following appears: "This provision codifies Alabama law requiring complete freedom from fault in provoking the difficulty for one who claims defense of self . . . and conforms to contemporary revisions." The portion of the oral charge objected to was not misleading, and, contrary to appellant's contention, could not have led the jury to believe that appellant had the burden of proof regarding self defense, especially when viewing the oral charge in its entirety.
The trial judge, in refusing to give defendant's requested instruction No. 22, stated that he had adequately covered the matters stated therein, in his oral charge. We agree. Requested charges must be considered in the light of, or in connection with, all other charges given by the court, and it is not error to refuse to give a requested instruction which is properly and sufficiently covered by other instructions. Burress v. State,56 Ala. App. 414, 321 So.2d 752 (1975); Mauldin v. State,46 Ala. App. 726, 248 So.2d 765 (1971); 23A C.J.S., Criminal Law, § 1333 (1961).
We also find that the requested charge was confusing and misleading. Generally, instructions to the jury should not be misleading or have a tendency to mislead, and an instruction, whether given by the court of its own motion or requested, is erroneous and should not be given where it is apt to confuse or mislead the jury. Lowe v. State, 54 Ala. App. 280, 307 So.2d 86
(1974); 23A C.J.S. Criminal Law § 1306 (1961). We believe that this charge, if given, was apt to mislead the jury. Further, the requested charge could mislead the jury to believe that retreat was not an important factor in the case. See Morris v.State, 146 Ala. 66, 41 So. 274 (1906).
We find no merit in appellant's contentions. Requested Charge No. 22 was properly refused by the trial court.
We have carefully examined the issues raised by appellant, and have found no error prejudicial to his substantial rights. In addition, we have searched the record for error and have found none. The judgment of conviction by the Cullman County Circuit Court is therefore affirmed.
AFFIRMED.
TYSON, TAYLOR and McMILLAN, JJ., concur.
BOWEN, J., concurs in result only.