Wayne Eugene McMahon was indicted on two counts of sexual abuse in the first degree, in violation of § 13A-6-66, Code of Alabama 1975. The jury found the appellant guilty of both charges. The appellant received a ten-year sentence for each conviction, with the two sentences to run concurrently.
M.S. and A.S. lived with their mother, Susan McMahon, and their stepfather, the appellant, in Woodstock, Alabama, until April of 1987. M.S. and A.S. are sisters and were born in 1976 and 1977, respectively.
The girls testified that prior to April of 1987, the appellant would come into their rooms early in the morning several times a week. The appellant would lie in bed with the girls and would touch them between the legs where "you use the bathroom" underneath their clothes. The girls stated *Page 1095 
that these incidents occurred over the course of several years but that they were scared to tell their mother about them.
One night in early 1987, the girls visited a neighbor, Sandra Rice, and told her about these incidents with this appellant. Later that night, Rice told Susan McMahon what the girls had told her.
A few weeks later, the girls were interviewed by John Faile, a Tuscaloosa police officer with the Youth Aid Division, and Marian Waters, a social worker with the Department of Human Resources. Faile and Waters then interviewed the appellant and Susan McMahon separately and then together. The appellant gave a statement in which he stated that he had not done anything of a sexual nature to the two girls. He said that he never got in the bed with the girls except sometimes on a Saturday morning when he would tickle them.
At this time, the girls and Susan McMahon moved from their house and went to live with a friend. A few weeks later, M.S. moved in with her maternal grandmother and A.S. went to live with her mother's brother and his wife. Mary McMahon, the appellant's mother, called A.S. while she was living with her aunt and uncle. Mary McMahon asked A.S. if the appellant had done anything to her. A.S. said that he had not done anything but that M.S. told her to say that the appellant had done these things to her.
Next, the girls went to live with their natural father and his wife, T.S. T.S. testified that she overheard the girls arguing one day while they were living at her house. A.S. said that it was M.S.'s fault that they weren't living with their mother any more and M.S. blamed A.S. for this. T.S. told the girls not to feel guilty about what had happened to them and told them that she had been molested as a child by her father. A.S. then stated that the appellant would come into her bedroom and get on her bed and rub her. M.S. said that nothing ever happened to her because she would have hit the appellant with a baseball bat and he knew it.
The appellant testified and denied sexually abusing the girls.
 I
The appellant was indicted and convicted for the offense of sexual abuse in the first degree, as provided by §13A-6-66(a)(3), Code of Alabama 1975. This section reads as follows:
 "A person commits the crime of sexual abuse in the first degree if:
 "He, being 16 years old or older, subjects another person to sexual contact who is less than 12 years old."
Sexual conduct is defined as "[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party." Ala. Code § 13A-6-60(3) (1975).
The appellant contends that the State failed to establish that these touchings were done with the intent to gratify the sexual desire of either party. We disagree.
The requisite intent in sexual abuse cases can be inferred from the act itself. Parker v. State, 406 So.2d 1036
(Ala.Crim.App.), cert. denied, 406 So.2d 1041 (Ala. 1981); Phillipsv. State, 505 So.2d 1075 (Ala.Crim.App. 1986), cert. denied, (Ala. 1987); Nails v. State, 549 So.2d 572 (Ala.Crim.App. 1989). The jury in this case certainly could have inferred the appellant's intent from the victims' testimonies regarding how and where the appellant touched them.
 II
Before the appellant's statement was introduced and admitted into evidence, defense counsel objected to two of the sentences included within the statement. These two sentences are as follows: "I never made any comments to my wife, drinking or sober, about sleeping with the girls when they get older. We have never had a discussion about my fears of the girls having sex when they get a little older." (R. 196). The appellant asserts that these two sentences should have been excluded from the statement as inadmissible hearsay. We disagree. *Page 1096 
 "[T]he acts and declarations of an accused, whether before or after the commission of an offense and whether or not a part of the res gestae, are admissible against that person, but only when such are part of the res gestae may they be admitted for the accused. Smoot v. State, Ala.Cr.App., 381 So.2d 668 (1980); Rogers v. State, Ala.Cr.App., 365 So.2d 322, cert. denied, Ala., 365 So.2d 334 (1978); Easley v. State, 56 Ala. App. 102, 319 So.2d 721 (1975)."
Atchley v. State, 393 So.2d 1034, 1051 (Ala.Crim.App. 1981) (emphasis in original). See also Williams v. State,536 So.2d 169 (Ala.Crim.App. 1989).
 "As stated by Wigmore, 'any and every statement of an accused person, so far as not excluded by the doctrine of confessions * * * or by the privilege against self-incrimination * * * is usable against him as an admission * * *.' 6 Wigmore, Evidence, § 1732, p. 99 (3rd Ed. 1940)." United States v. Rouse, 452 F.2d 311, 313 (5th Cir. 1971)."
Ashhurst v. State, 462 So.2d 999, 1010 (Ala.Crim.App. 1984),cert. denied, (Ala. 1985).
Thus, we conclude that the trial judge properly allowed the appellant's entire statement into evidence at trial.
 III
The following occurred during the cross-examination of the appellant by the State:
"BY MR. LEMLEY:
 "Q Now, Mr. McMahon, you drink at least thirty-six ounces of alcohol every night, don't you?
"A No, sir.
 "MR. TIPTON: That doesn't have any relevance at all.
 "THE COURT: I sustain. He asked and answered. It doesn't make any difference. Go ahead.
 "MR. LEMLEY: Your Honor, I am not sure as to the court's ruling. May we approach the bench?
 "MR. deGRAFFENREID: Well, he sustained the objection.
 "THE COURT: Well, let's see what you've got. (Whereupon an off the record bench conference was had.)" (R. 297)
. . . . .
 "Q Now, do you recall during the course of that evening telling Mrs. Waters that you drink at least thirty-six ounces of alcohol every night?
"A Yes, sir.
 "MR. TIPTON: Your Honor, we object to that again. That's irrelevant and that's not impeachment of anything that he has testified to before.
"THE COURT: Overruled." (R. 298)
The appellant argues on appeal that the prosecutor's question was immaterial and constituted improper impeachment.
We are unable to address this issue because defense counsel failed to make a timely objection both times the question was asked. "[W]here a question is answered before an objection is made, the objection comes too late and the court's ruling will not be declared in error without a motion to exclude and an adverse ruling." Reeves v. State, 456 So.2d 1156, 1160
(Ala.Crim.App. 1984).
Defense counsel did not make a motion to exclude in either of these two instances and, thus, there is nothing for this court to review.
 IV
The following question was propounded to the appellant during cross-examination:
 "Q Do you remember telling them we have a dog too and we don't feed him much?
 "MR. TIPTON: Your Honor, again we object on the ground of relevance.
"THE COURT: Overruled." (R. 301)
The appellant contends the trial court erred by overruling his objection to this question.
"The determination of the relevancy of evidence lies within the sound discretion of the trial judge." Borden v. State,522 So.2d 333, 335 (Ala.Crim.App. 1988) (citing *Page 1097 
C. Gamble, McElroy's Alabama Evidence § 21.01(6) (3d ed. 1977)).
While we are not certain of the relevancy of this question, we cannot say that the trial judge abused his discretion in overruling the appellant's objection.
Furthermore, even if the trial court's ruling was erroneous in this instance, we do not believe the error injuriously affected the substantial rights of this appellant. Thus, if error occurred at all, it was harmless. See A.R.A.P. 45; Pagev. State, 487 So.2d 999 (Ala.Crim.App.), cert. denied, (Ala. 1986).
 V
Prior to trial, the prosecution made a motion in limine with the trial judge requesting that he order the defense counsel not to ask any questions which would reveal where the girls were living or the names of any foster parents. Defense counsel objected and asked the court to require the State to provide the names of the foster parents so that the defense could interview them and determine whether the foster parents had any information which would prove the innocence of this appellant.
The court stated that he did not see any reason for the State to disclose the names of the foster parents unless it had knowledge of some exculpatory material.
The State replied that it had no knowledge of any exculpatory evidence possessed by the foster parents, and that if the State obtained knowledge of any exculpatory evidence, it would turn the same over to the defense. The trial judge denied defense counsel's request.
During the cross-examination of Marian Waters, defense counsel informed the trial court that he had learned the names of one set of the foster parents. He stated that he contacted the foster parents and was told that they could not talk to defense counsel due to a DHR policy which prevents foster parents from talking about their foster children.
Defense counsel asked the court to lift DHR's policy so that the foster parents could talk with defense counsel if they wished. The State replied that it understood that the girls had not discussed the incidents at bar with these foster parents. The trial judge then denied defense counsel's motion.
The appellant argues on appeal that the trial court erred by not providing him an opportunity to interview the foster parents to determine if the girls had made any inconsistent statements to them regarding these allegations.
Under the particular facts and circumstances of this case, we conclude that the appellant was not harmed by the trial judge's denial of defense counsel's motions.
It appears that the information defense counsel was seeking to obtain from these witnesses was whether the girls had recanted their allegations to these foster parents.
At trial, two witnesses, T.S. and Mary McMahon, testified that the girls had recanted their stories to them. Furthermore, the girls themselves admitted they had recanted their statements at times. Thus, even if defense counsel had talked to the foster parents and they in turn had told him the girls had changed their stories, this evidence would have been merely cumulative. See Locke v. State, 527 So.2d 1343 (Ala.Crim.App. 1987), aff'd, 527 So.2d 1347 (Ala. 1988).
Moreover, defense counsel never offered any evidence that the foster parents would have agreed to talk to him if the DHR policy were lifted. Any person has a right to refuse to be interviewed. See Hill v. State, 366 So.2d 296 (Ala.Crim.App. 1978), aff'd, 366 So.2d 318 (Ala. 1979). Defense counsel certainly could have asked the foster parents whether they would have been willing to talk to him if the DHR policy were lifted. Thus, we find that no reversible error occurred in this instance.
For the reasons stated above, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 1098