[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 699 
On April 1, 1983, the Cullman County Grand Jury twice indicted Chris Allen Montgomery, Michael Sanderson and Albert William Pugh for the offense of robbery first degree. The charges were based on a single transaction and consisted of one indictment alleging the robbery of Donald Steele and one indictment alleging the robbery of Truman Waters.
The District Attorney moved to consolidate all indictments and all defendants for purposes of trial, and defendant Pugh moved to sever his case from those of Montgomery and Sanderson. The State's motion to consolidate was granted by the court, and Pugh's motion to sever was denied.
On May 10, 1983, the jury returned verdicts of guilty of robbery in the first degree, as charged in the indictment, for each of the three defendants. Each was adjudged guilty and each received a sentence, pursuant to the Habitual Felony Offender Statute, of life without parole on both convictions. Each defendant appeals from his sentencing and the cases remain consolidated for purposes of this appeal.
On February 10, 1983, Truman Waters was conversing with Donald Steele at Steele's Grocery Store in the Jones Chapel Community in Cullman County, Alabama, when at about 2:50 p.m., three men entered the store. The men, positively identified at trial as the defendants, Montgomery, Sanderson and Pugh, each held out a pistol and announced, "This is a stick-up." Montgomery held a large, western-style revolver, Sanderson a smaller revolver and Pugh an automatic pistol.
While Montgomery held his gun on the victims, Sanderson removed a total of thirteen firearms, including rifles, shotguns and pistols from the wall behind the cash register and from a floor rack. Pugh took $580.00 from Steele's wallet, and one of the three men took $271.00 from Waters' billfold and cleaned out the cash register, taking currency, change and checks.
Before the robbers left they bound Steele and Waters with gray duct tape, leaving them on the floor. Steele, however, managed to get to his feet in time to observe a red Ford pickup truck leaving the store's parking area. He was also able to hobble to the telephone and call the sheriff's office, reporting the robbery and giving the officer a description of the vehicle and the direction in which it was headed.
Within minutes after Steele's call Deputy Hobson spotted the truck and gave chase. Eventually, several police cars converged on the truck forcing it into a driveway. When thus cornered, Pugh jumped from the driver's side of the truck and ran, firing on the police officers as he fled.
Three of the officers pursued Pugh, and, after an exchange of gunfire, apprehended him. A subsequent search of Pugh's clothing yielded $769.00 in currency, three checks made payable to Steele's Grocery, and gray duct tape.
During the chase and capture of Pugh, Sanderson and Montgomery were quietly taken from the truck into the custody of the police officers. Two pistols were found in the seat of the truck, and thirteen firearms were recovered from the bed and the cab.
The three suspects were returned to the store where they were identified by both Steele and Waters as the men who had robbed them half an hour earlier.
It is settled law in Alabama that prompt on-the-scene confrontation and identification of suspects are consistent with good police work and not a denial of due process.Cornelius v. State, 49 Ala. App. 417, 272 So.2d 623, (Ala.Cr.App. 1973), *Page 700 
citing Bates v. United States, 405 F.2d 1104 (3d Cir. 1969). As emphasized by the Cornelius, supra, court, the action of police in returning suspects to the vicinity of the crime for immediate identification encourages accuracy, since the witness's memory is fresh, and allows for release of innocent suspects so that police are able to pursue the true culprits as soon as possible. In Cornelius, supra, as in this case, there had been a robbery and the suspects were returned to the scene half an hour later.
Appellant Albert William Pugh raises two issues on appeal. First, he contends that the trial court committed reversible error when it granted the State's motion for consolidation of the cases and defendants. In this vein, appellant argues that: (1) he was so prejudiced by this joinder of cases that a fair trial could not be had, (2) his request of immediate trial opposed his co-defendant's requests for delays, (3) he was not aware of his co-defendants' intentions vel non of testifying at trial, and (4) the rules pertaining to joinder and consolidation are unconstitutionally vague and indefinite.
In upholding the constitutionality of A.R.Crim.P.Temp. 15, this court, in Holsemback v. State, 443 So.2d 1371 (Ala.Cr.App. 1983) held that joinder and consolidation of defendants and indictments are procedural, and as such, do not generally affect the substantive rights of the parties. The court, inHolsemback, supra, set out a test for when a severance should be granted on the ground of prejudice to the defendants. The test is: "whether under all the circumstances as a practical matter it is within the capacity of the jurors to follow the court's instructions and to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts." Holsemback, supra. In addition, the court observed that the trial judge must, of necessity, weigh the prejudice attendant to a joint trial against the interests of judicial economy, and that an appellate court should not disturb the trial court's ruling absent a showing that the lower court abused its discretion.
The cases against defendants Pugh, Montgomery and Sanderson present a paradigmatic case for consolidation of trials under Rule 15.4, supra. Paragraph "(a)" of that rule sets out the following three alternative circumstances under which joinder of defendants in one indictment would be proper:
 (i) if they are alleged to have participated in the same act or transaction; or
 (ii) when the several offenses are a part of a common conspiracy, scheme, or plan; or
 (iii) when the several offenses are otherwise so closely connected that it would be difficult to separate the proof of one from the proof of the other.
The cases of Pugh, Montgomery and Sanderson qualified for joinder under all three tests since they were alleged to have participated jointly in a single transaction involving a robbery of two persons.
Pugh argues that the consolidation of defendants resulted in denial to him of his constitutional right to a speedy trial. There is, however, nothing in the record to indicate that either delay or continuance of trial occurred, and trial commenced less than ninety days after the robbery.
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182,33 L.Ed.2d 101 (1972) the Supreme Court identified four criteria for consideration in speedy trial questions. They are: (1) length of delay, (2) reason for delay, (3) defendant's assertion of his right, and (4) prejudice to defendant. In Barker, supra, the Court held that where defendant was not seriously prejudiced by more than five years delay between arrest and trial that his right to a speedy trial was not violated. Pugh has not shown that he was prejudiced by the three month interval between arrest and trial. See, also Diamond v. State,49 Ala. App. 68, 268 So.2d 850 (1972); Sellers v. State,48 Ala. App. 178, 263 So.2d 156 (1972); Schillaci v. State,347 So.2d 552 (Cr.App.) *Page 701 
Appellant complains that there were inadequate discovery procedures to allow him advance notice of whether his co-defendants intended to testify. The state was not in a position to inform Pugh of the intentions of his co-defendants. Pugh's counsel, however, was informed at the motion hearing that the State had no statement of any defendant to introduce at trial, no statement was introduced and no defendant testified.
Pugh has not shown that he was in any way prejudiced by the joinder of defendants for purposes of trial, or that the trial court abused its discretion in granting the State's motion to consolidate. Therefore, under Holsemback, supra, the trial court's ruling on the matter must be upheld.
The second issue Pugh raises is whether the trial court erred in admitting evidence, in the form of certified copies of trial docket sheets, of three prior felony convictions. It is well established that such records are sufficient proof of prior felonies in an habitual offender context. E.g., Gilbert v.State, 410 So.2d 473 (Ala.Cr.App. 1982); Thomas v. State,395 So.2d 1105 (Ala.Cr.App. 1981). Pugh argues that such evidence was not adequate proof that he acted knowingly and voluntarily in pleading guilty in the prior cases since it did not demonstrate that he was represented by counsel. Whether or not such was the case, this contention has no merit, since Pugh admitted at his sentence hearing both the convictions and the fact that he was represented by counsel. Gilbert v. State,410 So.2d 473 (Ala.Cr.App. 1982).
Appellant Montgomery raises three issues on appeal. First, appellant contends that the sentence of life imprisonment without parole mandated by Alabama's Habitual Felony Offender Statute, § 13A-5-9, Code of Alabama 1975, is a violation of his rights under the Eighth Amendment of the Constitution of the United States. The constitutionality of Alabama's Habitual Felony Offender Statute has been affirmed on numerous occasions by this court, most recently in Weaver v. State, (Ala.Cr.App. 1983, aff'd) 437 So.2d 626. In this case appellant was a participant in an armed robbery, which is precisely the type of violent crime the statute is primarily designed to deter. Hence, the Habitual Felony Offender Statute is constitutional as applied to appellant.
Montgomery next contends that a prior federal conviction was erroneously used to enhance his punishment under the Habitual Felony Offender Statute. It is settled law that the trial court will not be placed in error on appeal for grounds not specified during the sentence hearing. Smith v. State, 409 So.2d 455
(Ala.Cr.App. 1981); Slinker v. State, 344 So.2d 1264
(Ala.Cr.App. 1977); Rogers v. State, 53 Ala. App. 573,302 So.2d 547 (1974). Here, appellant raises different grounds on appeal from those raised during the sentence hearing, and there being no proper objection at the trial level, the sentencing must be affirmed.
Montgomery contends lastly that a remark made by the district attorney during the course of the trial should have resulted in a mistrial, on a motion of appellant's counsel. The remark complained of is as follows: "Mr. Harris: Yes, sir. I think that is the procedure that the courts have said is the best procedure for identification is what we have just been over during voir dire." The witness had testified on voir dire concerning a "show up" of the three defendants, but nothing was said in front of the jury to inform them of what "procedure" the prosecutor was referring to. Defense counsel objected and moved for a mistrial which was denied.
It is axiomatic that the grant or denial of a motion for mistrial is a matter within the sound discretion of the trial court which will only be disturbed upon a showing of manifest abuse. Durden v. State, 394 So.2d 967, cert. denied,394 So.2d 977 (Ala. 1981); Shadle v. State, 280 Ala. 379, 194 So.2d 538
(1967); Ala. Code § 12-16-233 (1975). We find no such abuse here.
Appellant Sanderson also raises three issues on appeal. Appellant first contends *Page 702 
that the trial court erred in admitting twelve evidence tags over the objection that the best evidence rule required admission of the guns as best evidence. The tags in question had been attached to twelve stolen weapons which form part of the basis of the indictments against appellant. The weapons themselves were not introduced. Appellant complains that the guns, and not the evidence tags, were the best evidence.
The best evidence rule is defined in C. Gamble, McElroy'sAlabama Evidence, § 212.01 (3d ed. 1977) as follows: "When a party wishes to prove the terms of a writing, the original itself must be introduced into evidence if available. The original is said to be the best evidence of its terms and, consequently, is to be desired above such secondary evidence as a copy of oral testimony. A witness, therefore, cannot testify to the terms of a writing unless it is shown to be unavailable for some reason other than his own fault."
As is apparent from this definition, the best evidence rule has no application to physical objects, but rather is pertinent only to documentary evidence. Dunaway v. State, 50 Ala. App. 198, 278 So.2d 198, 50 Ala. App. 200, 278 So.2d 200 (1973);Watercutter v. State, 21 Ala. App. 248, 108 So. 870 (1926). The court, in Bell v. State, 364 So.2d 420, cert. denied,364 So.2d 424 (Ala. 1978), observed that chattels bearing an inscription could fall within the best evidence rule, but that Alabama cases have not so held. Rather, the Bell court reiterated that in Alabama the best evidence rule does not include chattels. Appellant's contention is, therefore, without merit.
The second issue raised by Sanderson on appeal is whether the trial court committed reversible error in allowing witness Truman Waters to remain in the courtroom during the cross-examination of witness Donald Steele.
Steele was the first witness called by the state and when the prosecution reached the matter of identification, the jury was excused on motion of defense's counsel and counsel requested that Waters be excused for the duration of the voir dire examination, stating, "I don't object to him being in the courtroom during the actual testimony of the case . . ." After the conclusion of the voir dire examination and the return of the jury to the courtroom, and Steele's subsequent testimony concerning the robbery and the identification of the robbers, defendant's counsel requested that Mr. Waters be excluded from hearing the cross-examination of Steele, "because he has not been through a voir dire hearing of this matter . . . on the identification."
The enforcement of the rule of exclusion of witnesses is a matter within the sound discretion of the trial court. Chatmanv. State, 380 So.2d 351 (Ala.Cr.App. 1980); Stone v. State,55 Ala. App. 663, 318 So.2d 359 (1975); Gamble, McElroy's AlabamaEvidence, § 286.01 (3d ed. 1977). Furthermore, the decision as to whether Waters would be allowed to testify, after having heard earlier evidence is normally not open to review. Averittev. State, 384 So.2d 1245 (Ala.Cr.App. 1980); Stewart v. State,49 Ala. App. 681, 275 So.2d 360 (1973).
We are of the opinion that the court did not abuse its discretion in this matter.
The third issue appellant raises is whether the court erred in not ordering a new trial based upon certain remarks of the prosecutor during closing arguments. The prosecutor's statement asked the jurors to put themselves in the place of the victim. When defense counsel objected, the court immediately gave curative instructions to the jury regarding the remark.
A motion for mistrial implies a miscarriage of justice and is such a serious matter that it should be granted only where there is a fundamental error in trial which would vitiate the result. Floyd v. State, 412 So.2d 826 (Ala.Cr.App. 1981);Stennett v. State, 340 So.2d 67 (Ala.Cr.App. 1976); Ala. Code, §12-16-233 (1975). In Borden v. State, 337 So.2d 1388
(Ala.Cr.App. 1976), the court held that when a trial *Page 703 
judge sustained an objection and properly instructed the jury to disregard the matter that such action was not erroneous unless the matter was of such a nature that it created ineradicable bias or prejudice. Furthermore, it is a basic premise that when prejudicial remarks have been made the trial judge is in a better position than is an appellate court to determine whether the remarks were so prejudicial as to be ineradicable. Favor v. State, 389 So.2d 556 (Ala.Cr.App. 1980);Chambers v. State, 382 So.2d 632, cert. denied, 382 So.2d 636
(Ala. 1980); McAllister v. State, 44 Ala. App. 511,214 So.2d 862 (Ala. 1968).
The trial court acted properly in giving immediate instructions to the jury regarding the prosecutor's remarks and we find no ineradicable prejudice to appellant.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellants Pugh, Montgomery and Sanderson, and have found none. The judgment of conviction is affirmed in each case.
AFFIRMED.
All the Judges concur.