Alice Ward Graham and Alvin Barton Ward were indicted for murder in violation of § 13A-6-2, Code of Alabama 1975. The two appellants are a brother and sister and the victim in this case was Paul Graham, the appellant Alice Graham's husband and appellant Ward's brother-in-law. The appellants' cases were consolidated for trial and the jury found them "guilty as charged in the indictment." Both appellants were sentenced to 20 years' imprisonment in the penitentiary.
Edward Strachan testified that he owned the Underpass Inn on December 30, 1983. Early that evening, the appellants came into the bar and started drinking beer and shooting pool. Around 11:15 that night, the victim came in and began complaining about appellant Alice Graham cashing so many of his checks. While the victim was arguing with the appellant, Graham, appellant Ward came over and pushed the victim. Strachan then told the victim to leave, which he did.
After the victim, Paul Graham, left, appellant Ward went outside. A few minutes later appellant Ward came back inside and asked appellant Graham for the gun because "he was going to kill that SB." (R. 19). Appellant Graham then gave the gun to appellant Ward and he went back outside.
Strachan then heard appellant Ward and the victim, Paul Graham, arguing. He looked outside and saw appellant Ward shoot the victim. Appellant Ward then walked back to the door and got appellant Alice Graham. As they were leaving appellant Ward said, "I just killed that SB." (R. 23).
Norman Nichols testified that he was at the Underpass Inn on the night in question. While there, Nichols overheard the victim and appellant Ward arguing about Ward using the victim's money to purchase drinks. During the argument, Nichols *Page 918 
heard appellant Alice Graham tell the victim that "blood was thicker than water" and that she had known her brother a lot longer than she did him. (R. 54-55).
At some point Strachan told the victim to leave. The victim went outside, started his truck and then came back to the door and told Strachan that he would kill him if he cashed any more of his checks.
A few minutes later appellant Ward went outside. Nichols heard some pounding on a truck. He looked outside and saw appellant Ward pulling out a pistol. Nichols then heard a gunshot.
Appellant Ward then came to the door and got appellant Graham. As the two walked away, appellant Ward said, "I killed that son of a bitch." (R. 57). Nichols then went outside and found the victim lying on the ground.
Lawrence Busbee was also at the Underpass Inn on the night in question. He testified that the victim was upset about appellant Graham spending so much money. At some point the victim and appellant Ward started to fight. Busbee and Strachan separated the two and Busbee walked outside with the victim to try and calm him down. The victim told him that he'd be all right in a few minutes and Busbee went back inside.
Once inside, Busbee heard appellant Ward say to appellant Graham, "Give me the gun and I'll go out there and kill that SB." (R. 82).
After appellant Graham gave appellant Ward the gun, Busbee asked her why she gave him the gun to go kill her husband. She replied, "I don't give a damn. Blood's thicker than water." (R. 83).
Once appellant Ward was outside, Busbee heard Ward and the victim, Paul Graham, arguing. Busbee looked outside and saw appellant Ward pointing the gun at the victim. Busbee then heard the gun go off and appellant Ward came to the door and got appellant Graham. Appellant Ward said, "He's dead. Come on, let's go." (R. 85).
Terry Hicks, an officer with the Mobile Police Department, received a dispatch about the shooting at the Underpass Inn. He proceeded to a residence located near the Underpass Inn at 153 Ogden Avenue. As he approached the house, an elderly woman (the appellants' mother), opened the door. Appellant Ward was on the phone.
Hicks told the appellants' mother that he needed to talk to appellant Ward and she let him in. After appellant Ward hung up the phone, Hicks asked if he'd been at the Underpass Inn. Appellant Ward replied that he had. Hicks then patted him down for weapons and asked him about the gun. Appellant Ward said that he had "thrown it away." No weapon was ever found.
Leroy Reddick performed the autopsy on the victim's body. He determined the cause of death to be a gunshot wound to the chest and abdomen.
Appellant Graham testified that she was married to the victim and they had two children. On the afternoon of December 30, 1983, the victim came home at 3:00 o'clock and told appellant Graham that he was going to the Underpass Inn. She replied that she would join him if she could get a babysitter. After obtaining a babysitter, appellant Graham picked up appellant Ward and the two went to the Underpass Inn. Once there, they played pool and drank beer with the victim.
At some point, the victim and appellant Ward had some words and Strachan told the victim to leave. A few minutes later the victim came back to the door and told Strachan that he would kill him if he cashed any more of his checks.
A short while later appellant Ward asked appellant Graham for her gun and said he wanted to go home. The victim had given her the gun for protection. Appellant Graham gave him the gun but thought the victim had already gone home. She stayed inside until appellant Ward came back and got her.
She did not recall making any statement about "blood being thicker than water" and didn't know appellant Ward would shoot *Page 919 
the victim, her husband. She stated that the two had been good friends. She said the victim usually carried a gun in his pocket.
Two witnesses testified to appellant Graham's good reputation in the community.
Appellant Ward testified that, while he was at the Underpass Inn on the evening in question, he overheard the victim say that he had his gun on him that night.
At some point the victim got angry at Strachan for cashing his checks for appellant Graham. The victim told appellant Ward that his "days had come to an end." (R. 167). Appellant Ward asked the victim what he meant and the victim said appellant Ward knew what he was talking about.
Then appellant Ward and the victim had an argument and Strachan told the victim to leave. The victim left and then came back to the door and said he would kill Strachan if he cashed any more checks for appellant Graham.
Appellant Ward then told appellant Graham that he was going to his mother's house to get his truck and go over to his girlfriend's house. He asked appellant Graham for her pistol so she wouldn't be involved with a gun if the victim came back. Appellant Ward got the gun, walked outside and saw the victim under the hood of appellant Graham's car. Appellant Ward asked the victim what he was doing and he replied that he was fixing the car so appellant Graham couldn't drive it. The two began arguing. The victim then got the battery from appellant Graham's car and put it in his truck.
The victim then looked at appellant Ward and said, "I think I'll go ahead and do it anyway." (R. 172). When appellant Ward asked what he meant, the victim replied, "just go ahead and shoot your ass." (R. 172). Appellant Ward thought about the gun and the victim turned around and appellant Ward thought he had the gun. Appellant Ward then took the gun he got from appellant Graham and shot the victim. He went and got appellant Graham and went to his mother's house. He didn't tell appellant Graham about the shooting until he told his mother. Appellant Ward testified that he did not intend to kill the victim.
 I
Prior to the commencement of this trial, the two appellants' cases were consolidated for trial by agreement of the parties. During trial, appellant Graham made two motions for severance. Both appellants now assert the trial court erred by consolidating their cases and by failing to grant the motions for severance.
Rule 15.4 (f), Alabama Temporary Rules of Criminal Procedure discusses the timing of severance motions. It provides:
 "In the circuit court a motion to sever defendants must be made not more than seven (7) days after arraignment; or, if there was no arraignment, then within seven (7) days after the filing of a written plea of not guilty; or, in the event the court has ordered defendants to be tried jointly, pursuant to section (b), then within seven (7) days of the court's order; but in any event, subject only to the further provisions of this section (f), such a motion must be made prior to commencement of trial. In other courts such a motion must be made not more than seven (7) days after the filing of the charge or charges against the joined defendants; or, in the event the court has ordered that defendants be tried jointly; pursuant to section (b), then within seven (7) days of the court's order; but in any event, subject only to the further provisions of this section (f), such a motion must be made prior to the commencement of trial. If, after the expiration of these time periods, a ground which was not previously known arises or becomes known, either before or during trial, and that ground could not have been discovered previously through the exercise of due diligence, then a party may move for a severance of defendants, but must do so at the earliest reasonable opportunity. The right to move for severance *Page 920 
is waived if a proper motion is not timely made." (emphasis added)
The record clearly indicates that a motion for severance was not made until the trial commenced. Appellant Graham's first motion to sever was during the direct examination of Strachan. During Strachan's testimony, the trial judge admitted certain hearsay evidence with regard to appellant Ward but excluded this evidence with regard to appellant Graham. Defense counsel for appellant Graham argued that the jury would not be able to consider this evidence as to appellant Ward and not consider the same evidence as to his client. Neither appellant has demonstrated to this court that the grounds for this motion to sever were not previously known before trial or could not have been discovered previously through the exercise of due diligence. Strachan was available to defense counsel prior to trial and, therefore, the substance of his testimony could have been known prior to trial.
Furthermore, neither appellant was prejudiced by the trial judge's failure to grant this motion for severance. The gist of Strachan's hearsay statement which was made outside the presence of appellant Graham (although this fact is not entirely clear from the record) was that the victim told appellant Ward that appellant Graham was writing checks faster than he could make money to cover the checks. This same evidence came in numerous times during the course of the trial without objection and was properly admissible with regard to both appellants.
Moreover, the trial judge instructed the jury not to consider testimony as to a party to whom he had sustained an objection.
The second motion to sever was made during the cross-examination of appellant Ward. At this time the State was attempting to introduce a statement made by appellant Ward. Appellant Graham's defense counsel objected to the statement being admitted against his client. Again, the appellants have not shown to this court that the grounds for this motion for severance were not known prior to trial or could not have been discovered previously through the exercise of due diligence. Defense counsel for both appellants knew of the existence of appellant Ward's statement prior to trial and were aware that it might be introduced into evidence if appellant Ward testified.
Furthermore, neither appellant was prejudiced by the denial of this motion to sever.
Although appellant Ward's statement was marked for identification, it was never offered or admitted into evidence.
Consolidation of defendants is "procedural, and as such [does] not generally affect the substantial rights of the parties."Montgomery v. State, 446 So.2d 697 (Ala.Crim.App. 1983), cert. denied, 446 So.2d 697 (Ala. 1984). The test for determining when a severance should be granted on the ground of prejudice is "whether under all the circumstances as a practical matter it is within the capacity of the jurors to follow the court's instructions and to collate and apprise the independent evidence against each defendant solely upon that defendant's own acts."Montgomery, supra at 700 (quoting Holsemback v. State,443 So.2d 1371 (Ala.Crim.App. 1983), cert. denied, 443 So.2d 1371 (Ala. 1984). The trial judge obviously determined that the jury could consider the evidence presented in this case separately against these appellants and found that the interests of judicial economy outweighed any prejudice to the appellants as a result of the consolidated trial. His decision will not be disturbed absent an abuse of discretion. Montgomery, supra. We find none here.
The case before us is a classic example of when a consolidated trial is needed. The appellants are alleged to have participated in the same act or transaction, the offenses are a part of a common conspiracy, scheme or plan and are so closely connected that it would be difficult to separate proof of one from the proof of the other. Rule 15.4 (a)(i, ii, iii), Alabama Temporary Rules of Criminal Procedure. *Page 921 
The consolidation of the two appellants' cases was, therefore, proper and the motions to sever were properly denied.
 II
The appellants challenge the sufficiency of the evidence. A person commits the crime of murder if, with intent to cause the death of that person, he causes the death of that person. Ala. Code, § 13A-6-2 (1975).
 A Sufficiency of evidence as to Appellant Ward
There was evidence presented that the victim and appellant Ward had an argument prior to the shooting. After the victim left the bar, appellant Ward asked appellant Graham for her gun, and told her that he was going to "kill the SB." After he obtained the gun appellant Ward went outside. He was seen by several witnesses holding the gun on the victim. Soon thereafter, a gunshot was heard. As appellant Ward was walking away from the scene, he told appellant Graham that he had "killed the SB." The victim was found lying on the ground and died from a gunshot wound to the chest.
The statements made by appellant Ward immediately before and after the shooting, as well as his use of a deadly weapon, indicate he had the requisite intent to cause the death of the victim. Beard v. State, 337 So.2d 1372 (Ala.Crim.App. 1976);Arthers v. State, 459 So.2d 972 (Ala.Crim.App. 1984); Free v.State, 455 So.2d 137 (Ala.Crim.App. 1984); Sowells v. State,339 So.2d 1090 (Ala.Crim.App. 1976).
The State clearly presented a prima facie case of murder on the part of appellant Ward.
 B Sufficiency of the evidence as to appellant Graham
Appellant Graham was charged with the victim's murder on a complicity theory. "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense . . . [h]e aids or abets such other person in committing the offense. . . ." Ala. Code, § 13A-2-23 (2) (1975).
Any words or acts of a person which contribute to the commission of a crime, which are intended to incite or encourage the commission of that crime, make that person liable for that crime as a principal. Conley v. State, 354 So.2d 1172
(Ala.Crim.App. 1972).
The evidence in these cases shows that the victim had been involved in an argument with appellant Graham before the victim was shot. After the victim left the bar, appellant Ward asked appellant Graham for her gun and told her he was going to shoot the victim. Appellant Graham gave him the gun. When she was asked why she gave the gun to appellant Ward to kill the victim, appellant Graham replied that she didn't "give a damn. Blood's thicker than water."
Appellant Graham's act of giving the gun to Ward with the knowledge that he intended to kill the victim is an act which is clearly intended to encourage the commission of the victim's murder. She assisted appellant Ward in the victim's murder by giving him the gun knowing Ward had stated he was going to use it to kill the victim. Appellant Graham aided and abetted appellant Ward in the commission of the victim's murder. Thus, she is equally as liable for that murder.
There was sufficient evidence presented by the State from which the jury could conclude, by fair inference, that both appellants were guilty, beyond a reasonable doubt, of the murder of the victim, Paul Graham.
The judgment of the trial court is due to be and is, hereby, affirmed,
AFFIRMED.
All the Judges concur. *Page 922