Appellant Jerry Jerome Benton was convicted of murder in violation of § 13A-6-2, Code of Alabama 1975. He was sentenced to 25 years in prison and financial punishments.
The evidence tended to show that 16-year-old Lisa Stanley, the victim in this case, and Jerry Benton regularly dated, although when they met she was pregnant by another man. Her baby died soon after birth and Lisa told Jerry it had died because of a "virus." Jerry later asked her several times, based on rumors he had heard, whether she had AIDS and, he said, she evaded these questions. Jerry was charged with assaulting Lisa and that criminal *Page 163 
proceeding was still pending at the time she was killed.
About 6:30 a.m. on July 18, 1987, Jerry met Lisa as she got off work, and they walked to an old abandoned warehouse. There she met her death by strangulation, combined with blunt force trauma. The next day Jerry and his mother drove to the warehouse. His mother discovered Lisa's bloated corpse. Appellant surrendered to the police two days later.
 I
Appellant contends the trial court erred in denying him youthful offender status under § 15-19-1, et seq., Code of Alabama 1975.
Almost absolute discretion is vested in the trial judge by the Youthful Offender Act in the determination of whether to grant youthful offender status after an investigation of the defendant is conducted and the report of that investigation is reviewed. Fairchild v. State, 505 So.2d 1265, 1268 (Ala.Cr.App. 1986). The record reflects that a probation officer conducted an investigation of the appellant, which the court reviewed and used as a part of its basis for denying youthful offender status. The trial court acted in accordance with the law.
 II
Appellant also contends that the court erred by allowing a videotape and photographs into evidence, although "the state failed to produce" these items for him before trial as required under the discovery order.
No legal authority is cited in appellant's brief to support this contention. Therefore, this issue is deemed waived on appeal. Vinzant v. State, 462 So.2d 1037 (Ala.Cr.App. 1984).
Further, the record reflects that these items were in fact made available to trial counsel, to be viewed at the Dothan Police Department. Trial counsel argues that having to go to the police department rather than the district attorney's office took this evidence out of his reach, as it was, he argues, the district attorney's responsibility to provide him with the information, not the police department's. The discovery order shows that with regard to such items in custody of the state, the defendant must be permitted to inspect, copy, photograph, etc., these items. Obviously, which building these items were placed in presents no unduly burdensome obstacle to their inspection. Defense counsel, however, chose not to enter the offices of the police department. His choice not to inspect these records may not now be assigned as error of the trial court on appeal. No reversible error occurred here.
 III
Appellant also contends that the trial court erred by allowing a witness to testify to hearsay. During the questioning of the victim's sister the following occurred:
 "Q: Did you have a conversation with Mrs. Benton, the defendant's mother, in reference to where Lisa had been, or anything about her?
"A: Yes, sir.
 "Q: Would you tell us what she said her son had told her, if anything?
 "MR. NEWMAN: We object. It's hearsay, and outside the presence of the defendant.
 "MR. VALESKA: It's not hearsay. It's offered for rebuttal purposes, Judge, to impeach the defendant's testimony.
"THE COURT: Approach the bench.
 "(Attorneys approach the bench for an off-the-record discussion.)
"THE COURT: Overruled.
 "Q: Let me ask you this way: Did you have an occasion to go to the residence where Jerry Jerome Benton lived and his mother lived, Georgia Benton, and his sister Tracy lived?
"A: Yes, sir, I did.
 "Q: Did you have a conversation with Georgia Benton?
"A: Yes, I did.
 "Q: During that conversation, did you ask her if her son had made any statements in reference to where Lisa was? *Page 164 
"A: Yes, sir, she did.
"Q: What did she tell you that her son said?
"A: That he hadn't seen Lisa.
 "Q: Did she indicate that there had been any discussion between Georgia Benton, her mother — the defendant's mother — and the defendant, and did she question Jerry about the whereabouts of Lisa Stanley?
 "A: She said she had asked Jerry did he know where Lisa was, and she said that Jerry said he hadn't seen her."
Appellant's counsel sends us to the record to his objection to a question by the district attorney that would probably have yielded hearsay testimony. However, that question was never answered. After several more questions, there was an answer that was arguably hearsay, but counsel never objected to this.
To preserve error, objections must be timely made; of course, there must also be error. See Moore v. State, 415 So.2d 1210
(Ala.Cr.App.), cert. denied, 459 U.S. 1041, 103 S.Ct. 459,74 L.Ed.2d 610 (1982). Any error here was not preserved for review on appeal.
In addition, no legal authority is given in support of this contention and this issue is waived. Vinzant v. State,462 So.2d 1037 (Ala.Cr.App. 1984).
 IV
Last, appellant raises the issue of whether the trial court committed reversible error by failing to grant his motion for judgment of acquittal at the close of the state's case, and, again, subsequent to the jury's guilty verdict. Appellant argues that there was not sufficient evidence to meet all the elements of murder set out in § 13A-6-2, Code of Alabama 1975. In particular, appellant notes that with regard to murder, §13A-6-2, Code of Alabama 1975, only the "intentional" murder instructions were given to the jury on the judge's oral charge. Appellant contends that there was not sufficient evidence that he acted with "intent to kill" his girlfriend.
A review of the law with regard to the type of evidence which is sufficient to show the requisite element of "intent to kill," to support a murder conviction, necessarily involves observance of cases of murder under § 13A-6-2, Code of Alabama 1975, attempted murder under § 13A-4-2 and § 13A-6-2, Code of Alabama 1975, and assault with intent to murder under §13A-6-20, Code of Alabama 1975. In a majority of these cases, "intent to kill" is shown by the use of a deadly weapon and/or statements by the accused from which his intent may be inferred. See, e.g., Kinder v. State, 515 So.2d 55 (Ala.Cr.App. 1986); Cox v. State, 500 So.2d 1296 (Ala.Cr.App. 1986); Grahamv. State, 494 So.2d 916 (Ala.Cr.App. 1986); Johnson v.State, 390 So.2d 1160 (Ala.Cr.App.), writ denied, Ex parteJohnson, 390 So.2d 1168 (Ala. 1980).
There is no direct evidence that appellant intended to kill his girlfriend. Evidence to prove intent need not be direct, but may be circumstantial. Johnson, supra, at 1166-67. "Because the element of intent, being a state of mind or mental purpose, is usually incapable of direct proof, it may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances." Johnson, supra, at 1167; Tuckerv. State, 383 So.2d 579 (Ala.Cr.App. 1980), writ denied,383 So.2d 586 (Ala. 1980).
In the case at bar, the jury concluded that strangling a victim to death necessarily gave rise to an inference that appellant's purpose was to kill her. The medical examiner found the cause of death to be strangulation in combination with a blunt force injury to the head. The medical examiner's testimony would corroborate the theory that the victim was intentionally choked to death.
By appellant's own admission, he "grabbed" his girlfriend's neck, although he was asking the jury to believe it was an accidental strangulation. "A killing is not accidental when the act causing death is done intentionally." Phelps v. State,435 So.2d 158, 165 (Ala.Cr.App. 1983). Questions concerning "intent to kill" are normally questions for the jury. Page v. State,487 So.2d 999 (Ala.Cr.App. 1986). *Page 165 
In Kent v. State, 367 So.2d 508, 517 (Ala.Cr.App. 1978), writ denied, 367 So.2d 518 (Ala. 1979), this court stated:
 "In reviewing the trial court's action in overruling a motion to exclude, the standard for review is whether at the time the motion was made legal evidence was submitted to the jury from which the jury could by fair inference find the defendant guilty. Stewart v. State, Ala. Cr. App., 350 So.2d 764 (1977). This court in applying such a standard will not substitute itself for the jury by attempting to determine the probative force and weight of the evidence. Toles v. State, 170 Ala. 99, 54 So. 511 (1911); Leach v. State, 24 Ala. App. 423, 136 So. 493 (1931). Our task is to determine if legal evidence was presented from which the jury by fair inference could have found the defendant guilty beyond a reasonable doubt. Howell v. State, Ala. Cr. App., 339 So.2d 138 (1976)."
In this case, there was ample legal evidence presented from which the jury reasonably could have inferred that appellant's act was intentional, and thus fairly found him guilty. There was sufficient evidence to establish a prima facie case of murder. The court did not err in submitting the case to the jury.
Accordingly, this case is affirmed.
AFFIRMED.
All the Judges concur.