Walter Maul was indicted for the offenses of rape in the first degree, in violation of § 13A-6-61, Code of Alabama 1975, and sodomy in the first degree, in violation of § 13A-6-63, Code of Alabama 1975. The trial court granted the State's motion to consolidate Maul's cases with those of two of his codefendants: 1) Larry Williams, who was indicted for the offenses of rape in the first degree and sodomy in the first degree; and 2) Raymond June Saxon Mims, who was indicted for the offenses of kidnapping in the first degree, in violation of § 13A-6-43, Code of Alabama 1975, rape in the first degree, and sodomy in the first degree. The jury found Maul guilty of the two offenses as charged in the indictment, and he was sentenced as a habitual offender to life imprisonment without parole for each conviction. Seven issues are raised on appeal.
 I
The victim testified at trial that, on March 14, 1989, she had gone "job hunting" and was walking to the house of her brother's girlfriend, Valerie, also known as "Short." The victim testified that she "ran into" Willie Ford, also known as "Batman," who asked her if she wanted a ride. Batman drove her to the front of Short's house, and she stayed there a while before walking to the store to get some milk for Short's baby. Batman later walked to Short's house and the victim subsequently left, walking home with Batman. According to the victim, she and Batman stopped along the way at some picnic tables at a community center and talked. They then headed back to Short's house because she had forgotten her purse. She heard some people at the community center whistling at Batman, and she followed as Batman went over to talk to these people. She noticed a red two-door Jaguar automobile parked in front of the center and several individuals — including Mims and Terry Harris, also known as "Blue" — standing around the car. She testified that Mims threw her the car keys but that she did not know how to drive.
The victim got into the car with Mims, Blue, and Batman. She testified that she asked where they were going but that she got no answer, and that she said she wanted to go home. According to her, Mims drove the car to Homewood and began "tailing" a green car with tinted windows. She further testified that Mims drove the car to an apartment complex in Homewood; that Mims, Blue, Batman, and she walked upstairs to an apartment; that the men knocked on the apartment door; and that Walter Maul, also known as "Smokey," opened the door. She noticed that the apartment was completely empty with the exception of a large "boom box" radio on the floor and that Larry Williams, also known as "Little Larry," and Louis Nix, also known as "Bird," were in the apartment.
The victim next testified that Maul touched her breast, and she knocked his hand away. Mims then pulled her into the bedroom and Blue followed. Blue told her that she had better do what Mims wanted. Mims slapped her, threw her against the wall and to the floor, and had sexual intercourse with her while she fought and screamed. Mims then told Blue that he could do what he wanted to do to her. Blue then had sexual intercourse with her and threatened to kill her. Maul, Bird, and Williams then had sexual intercourse with her while she fought and screamed. Someone then grabbed her from behind, and Mims, Blue, and Williams forced her to perform oral sex on them. Mims then urinated in her mouth and on her face.
According to the victim, she was then carried to the living room, where her clothes were taken off and she was surrounded by men, including two new individuals, a man known as "Player" and a man *Page 20 
with a "jericurl." Blue then had anal intercourse with the victim and "burned" her with a coat hanger whenever she screamed. Maul, Bird, Blue, Player, and the man with the jericurl then had repeated sexual intercourse and oral sex with her. Mims, Maul, and Williams left the apartment, and Blue and Bird took the victim to the bedroom, where they had repeated sexual intercourse and oral sex with her over a period of several hours.
According to the victim, Batman was in the apartment when all these events transpired but he never did anything. Whenever she screamed or yelled, someone turned up the volume on the "boom box" radio. She subsequently heard a knock on the apartment door and heard Mims and a girl come into the apartment. She heard the girl refer to Mims as "Raymond." Mims then went into the bedroom and had sexual intercourse with the victim. A stout man with glasses then went into the bedroom and had sexual intercourse with her. She then convinced Blue to leave her alone in the bedroom, and she locked the door. She put on her panties, the only article of her clothing that she could find in the bedroom, and she jumped out of the second floor window and ran. A couple saw her, took her to their apartment, and called the police. The victim then went to the apartment with two police officers and identified Mims and the girl with him. According to the victim, all the other men and the "boom box" radio were gone. Also, according to the victim, the girl said that Mims had been with her all evening and Mims said that he had never seen the victim before. The girl subsequently admitted that Mims had not been with her all evening.
 II
Maul contends that the trial court erred in consolidating his cases with those of his codefendants, Raymond Mims and Larry Williams.
An informal hearing was held on September 29, 1989, on the State's motion to consolidate for one trial the various rape and sodomy, cases pending against Maul, Mims, and Williams and the kidnapping case against Mims. The transcript of those proceedings is not contained in the record on appeal. On October 12, 1989, the trial court issued an order consolidating the cases for trial. A motion for severance was filed on October 19, 1989. Following trial, the three codefendants filed a motion for new trial, which was denied after a hearing. In the order denying the motion for new trial, the trial court made the following findings of fact relative to its earlier consolidation order:
 "On October 12, 1989, consolidation of the cases against Mims, Maul and Williams was ordered. Defendants Nix and Harris were severed because of Bruton [v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)] considerations. Written order on consolidation is, of course, part of each defendant's transcript.
 "Having tried these cases to a conclusion, it is apparent that in spite of counsel's pre-trial protestations, these cases were entirely appropriate for consolidation as directed.
 "The defenses were not antagonistic, all defendants urging the 'consent defense'; there were not Bruton problems because no defendant made a statement; no defendant testified nor was any evidence adduced on behalf of any defendant; the evidence was not confusing and except for the evidence relative to defendant Mims and the leasing arrangements of the apartment and the registration of Mims's sports car the whole evidence pertained to the three defendants.
 "Except for the kidnapping charge levied against Mims, for which he was convicted, the charges of rape and sodomy were common to each defendant. Obviously the kidnapping offense was inextricably woven into the other charges and could not have conceivably confused the jury.
 "It is observed that throughout the litigation of these cases, both pre-trial, during trial and post-trial that the respective defense lawyers worked closely together, adopting each other's motions, arguments and strategies." *Page 21 
Rule 15.4, A.R.Cr.P.Temp., states as follows:
 "(a) Joinder. Two or more defendants may be charged in the same indictment, information, or complaint:
 "(i) if they are alleged to have participated in the same act or transaction; or
 "(ii) when the several offenses are a part of a common conspiracy, scheme, or plan; or
 "(iii) when the several offenses are otherwise so closely connected that it would be difficult to separate the proof of one from the proof of the other.
 "Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count.
 "(b) Consolidation. If defendants are charged in separate indictments, informations, or complaints, the court, on its own initiative or on motion of any party, may, no later than seven (7) days prior to trial, order that the defendants be joined for the purposes of trial if the defendants could have been joined in a single indictment, information, or complaint. Proceedings thereafter shall be the same as if the prosecution initially had been under a single indictment, information, or complaint. However, the court shall not order that the defendants be tried together without first providing the defendants and the prosecutor an opportunity to be heard.
 "(c) Trial. Defendants joined in the same indictment, information, or complaint, or joined for trial by court order pursuant to section (b), shall be jointly tried unless severed as provided in sections (d)-(g).
 "(d) Severance Grounds. If the court finds that by a joinder of defendants in an indictment, information, or complaint, or a joinder by order of court, as provided in this rule, a defendant or the state may be prejudiced to the extent that a fair trial cannot be afforded, the court shall order a severance of defendants or provide whatever other relief justice requires. However, without a finding of prejudice, the court may, with the agreement of all the parties, order a severance of defendants."
To establish that a trial judge abused his discretion in consolidating cases for trial, Maul must meet his burden of establishing that he was unable to obtain a fair trial without a severance and that he suffered compelling prejudice that the trial court could not prevent. Cowart v. State, 488 So.2d 497
(Ala.Cr.App. 1985), overruled on other grounds, McClendon v.State, 513 So.2d 102 (Ala.Cr.App. 1986) Compelling prejudice requiring severance does not result when the evidence against a codefendant is more damaging than the evidence against the defendant. Faircloth v. State, 471 So.2d 485 (Ala.Cr App. 1984), aff'd, 471 So.2d 493 (Ala. 1985).
 "Consolidation of defendants is 'procedural, and as such [does] not generally affect the substantial rights of the parties.' Montgomery v. State, 446 So.2d 697 (Ala.Crim.App. 1983), cert. denied, 446 So.2d 697 (Ala. 1984). The test for determining when a severance should be granted on the ground of prejudice is 'whether under all the circumstances as a practical matter it is within the capacity of the jurors to follow the court's instructions and to collate and apprise the independent evidence against each defendant solely upon that defendant's own acts.' Montgomery, supra at 700 (quoting Holsemback v. State, 443 So.2d 1371
(Ala.Crim.App. 1983), cert. denied, 443 So.2d 1371 (Ala. 1984)). The trial judge obviously determined that the jury could consider the evidence presented in this case separately against these appellants and found that the interests of judicial economy outweighed any prejudice to the appellants as a result of the consolidated trial. His decision will not be disturbed absent an abuse of discretion. Montgomery, supra."
Graham v. State, 494 So.2d 916, 920 (Ala.Cr.App. 1986).
In the case sub judice, involving the gang rape and sodomy of a young woman, Maul, Mims, and Williams are alleged to have participated in the same act or transaction, and the offenses are part of a common *Page 22 
conspiracy, scheme, or plan and are so closely connected that it would be difficult to separate proof of one from proof of the others.
Moreover, this court has repeatedly held that where evidence shows that two or more defendants raped the prosecutrix as part of one plan and as part of a single transaction, the joinder of those defendants is proper. Martin v. State, 482 So.2d 1272
(Ala.Cr.App. 1985).
Although only Mims's case contained an additional kidnapping count, the trial court obviously determined that the jury could consider the evidence presented in this case separately against these three codefendants and that the interest of judicial economy outweighed any prejudice to the three codefendants as a result of the consolidation. Graham v. State, supra, 494 So.2d at 920. Pursuant to Rule 15.4(b), A.R.Cr.P.Temp., consolidation is proper, and the trial court did not abuse its discretion.
 III
Maul contends that the trial court erred in refusing to give his written requested charges on sexual misconduct.
Maul filed written jury instructions, requesting that the court give the following charges to the jury:
"FIRST REQUESTED CHARGE
 "A person commits the crime of sexual misconduct if:
 "Being a male, he engages in sexual intercourse with a female and without her consent (under circumstances other than those covered by rape in the first or second degree) or with her consent where consent was obtained by the use of or engages in deviate sexual intercourse with another person (under circumstances other than those covered by sodomy in the first or second degree), either with or without the consent of the other person.
"SECOND REQUESTED CHARGE
 "To sustain the charge of sexual misconduct in this case the state by the evidence must prove beyond a reasonable doubt the following elements of the offense:
 "First: That Walter Maul, a male, engaged in sexual intercourse with [A.D.], a female, and
 Second: That he did so without her consent (under the circumstances other than those covered by rape in the first degree); or
 "Second: That Walter Maul, engaged in deviate sexual intercourse with [A.D.]."
Following the trial court's oral charge to the jury, the court asked if there were any exceptions and counsel for Maul said, "Your Honor, I think I am already on the record about my charges." It appears that an off-the-record charge conference was held. The trial court noted that Maul's attorney had objected to its not charging on lesser included offenses, but that the grounds for those objections were not put in the record. After discussion of other charges, counsel for Maul excepted to the judge's not giving the charges but failed again to put his specific charges or grounds on the record.
The burden is upon the appellant to check the record to ensure that his objections and the grounds therefor are clearly in the record. See Hollins v. State, 415 So.2d 1249
(Ala.Cr.App. 1982). Since Maul clearly failed to state the grounds for his exceptions, the court is due to be affirmed on this issue. Kyser v. State, 513 So.2d 68 (Ala.Cr.App. 1987).
Rule 14, A.R.Cr.P.Temp., states as follows: "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
We note, moreover, that even had this issue been properly preserved for review, the two requested jury charges on sexual misconduct were properly refused because *Page 23 
they were confusing and misleading. Page v. State,487 So.2d 999 (Ala.Cr.App. 1986).
The trial court therefore properly refused Maul's two requested jury charges on sexual misconduct.
 IV
Maul contends that the trial court erred in sentencing Maul as a habitual offender because Maul received more severe sentences than any of his codefendants.
The State in this case gave oral notice at trial of its intent to proceed under the Habitual Felony Offender Act with respect to Maul. At the sentencing hearing, the State produced certified copies of case action summaries for seven prior felony convictions for Maul. It was noted at the hearing that Maul was a juvenile at the time of these 1980 and 1981 felony convictions. The records, however, clearly show that in six of these convictions, Maul applied for but was denied youthful offender treatment. Maul also admitted that he was represented by an attorney at all the 1980 and 1981 cases and that he was treated as an adult in each of them. Hence, with more than three prior felony convictions and with the present two Class A felony convictions, the trial court sentenced him to the two mandatory life without parole sentences.
The Alabama Habitual Felony Offender Act, codified at §13A-5-9 et seq., Code of Alabama 1975, states at §13A-5-9(c)(3) as follows:
 "(c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and such convictions has committed another felony, he must be punished as follows:
". . . .
 "(3) On conviction of a Class A felony, he must be punished by imprisonment for life without parole."
A variation in sentences between co-actors in a criminal transaction does not alone make the harsher sentence cruel and unusual. Maddox v. State, 502 So.2d 790 (Ala.Cr.App. 1986),writ denied, 502 So.2d 794 (Ala.), cert. denied, 481 U.S. 1051,107 S.Ct. 2185, 95 L.Ed.2d 841 (1987).
 "[D]isparate treatment of similarly situated individuals at sentencing is not constitutionally impermissible. The Supreme Court has recognized that the 'Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences.' Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 2023, 26 L.Ed.2d 586 (1970). A sentencing authority must be given wide latitude in fixing the punishment for convicted offenders."
United States v. Satterfield, 743 F.2d 827, 841 (11th Cir. 1984), cert. denied, 471 U.S. 1117, 105 S.Ct. 2362,86 L.Ed.2d 262 (1985).
We note that, prior to trial, Maul was offered a life sentence, which he declined. Hence, the reason for the disparity in sentences was the mandatory application of the Alabama Habitual Offender Act, which has repeatedly been held to be constitutional. Jemison v. State, 439 So.2d 786
(Ala.Cr.App. 1983).
We therefore hold that the trial court properly sentenced Maul as a habitual offender under this statute.
 V
The remaining four issues are affirmed on the authority ofMims v. State, 591 So.2d 120 (Ala.Cr.App. 1991).
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 24